**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON L. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-1492 CAS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying the application of Brandon L. Wilson ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 8), Defendant has filed a brief in support of the Answer (Doc. 13), and Plaintiff filed a reply brief (Doc. 14). The case was reassigned to the undersigned United States District Judge on August 24, 2018.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI on January 23, 2013. (Tr. 66). Plaintiff's application was initially denied on May 20, 2013, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 78-82, 89-96). After a hearing, by decision dated June 15, 2015, the ALJ found that Plaintiff was not under a "disability" as defined by the Social Security Act. (Tr. 15-24). On July 27, 2016, the Appeals Council denied Plaintiff's

request for review. (Tr. 1-4). As such, the ALJ's June 15, 2015 decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 23, 2013, the application date. (Tr. 17). The ALJ found that Plaintiff has the severe impairment of anxiety disorder. However, Plaintiff's impairment did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-19). The ALJ assessed Plaintiff's anxiety disorder under paragraphs B and C of Listing 12.06. (Tr. 18-19).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations. (Tr. 19-22). From a mental standpoint the Plaintiff is able to maintain concentration and attention in 2-hour segments over an 8-hour period.[1] (Id.). The Plaintiff is able to respond appropriately to supervisors and coworkers where contact is casual and infrequent. (Id.). The Plaintiff is restricted from contact with the general public. (Id.). He is able to adapt to routine and simple work changes. (Id.). The Plaintiff is restricted from the operation of motor vehicles. (Id.). The ALJ found Plaintiff capable of performing his past relevant work as a telemarketer[2] and a fry cook. (Tr. 22). In the alternative, the ALJ found there

---

[1] The ALJ intended to limit Plaintiff to maintaining concentration and attention for 2-hour segments over an 8-hour period. Although the text included in the ALJ's decision reads that Plaintiff was limited to maintaining concentration and attention for "2-hour segments over a 3-hour period," as more fully explained below, the Court finds this statement to contain a typographical error.

[2] Although Plaintiff did not discuss this error in his brief, the Court believes it is worth mentioning that the ALJ's finding that plaintiff is capable of performing his past relevant work as a telemarketer is not supported by substantial evidence. The ALJ claims to rely on the

are additional jobs existing in the national economy that the Plaintiff can perform, including folding machine operator (DOT #208.685-014), assembler of small products (DOT #706.684-022),[3] and hand packager (DOT #920.587-018). Thus the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 24). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 416.920. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work

---

vocational expert's testimony, however, the vocational expert's testimony does not support this finding. The relevant hearing transcript is as follows:

[ALJ] Q:   Can the hypothetical individual perform any of the past jobs that you've described as actually performed or generally performed?
[VE]   A:   Okay. The hand packager job and the cook, deep fat, that job could still be done.
[ALJ] Q:   But not the telemarketer?
[VE]   A:   That's correct.

(Tr. 59-60). Contrary to the ALJ's finding, the vocational expert opined that the hypothetical individual with Plaintiff's limitations could not perform his past job as telemarketer. This obvious error is nonetheless harmless, as ALJ continued to step five of the sequential analysis.

[3]       The correct DOT code for assembler, small products is 706.684-022, not 208.685-014 as stated in the ALJ's decision. The ALJ incorrectly gave the same DOT code for both folding machine operator and assembler, small parts. (Tr. 290). Plaintiff accepts without argument that this error is typographical. (Doc. 14 at 3).

activities. . . ." Id. "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 416.920(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. § 416.920(f). The burden rests with the claimant at this fourth step to establish his or her RFC. Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 416.920(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. § 416.920(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC

remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Masterson v. Barnhart, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff argues that the ALJ erred in considering the opinion of consultative psychologist Kimberly R. Buffkins, Psy.D., in reaching her decision. (Doc. 8 at 10-15). Second, Plaintiff argues that the vocational expert's responses to the ALJ's hypothetical questions do not represent substantial evidence because the hypothetical questions did not encompass all relevant impairments and did not capture significant elements of the ALJ's residual functional capacity finding. (Doc. 8 at 8-10). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Credibility

After considering the evidence, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms to be not entirely credible. (Tr. 20).

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's

determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. § 416.945. In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907-908 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's minimal pursuit of treatment. (Tr. 20). Specifically, the ALJ found that despite the Plaintiff's claim of disabling anxiety, the record contained no evidence that Plaintiff sought medical treatment during the relevant period. (Id.). During a February 21, 2015 consultative examination, Plaintiff indicated that he was not receiving any mental health treatment or taking any psychotropic medication. (Tr. 20). The failure to seek treatment from a mental health professional is a proper consideration for a credibility determination. See Partee v. Astrue, 638 F.3d 860, 864 (8th Cir. 2011) (holding that the failure

to seek mental health treatment is a relevant consideration when evaluating a claimant's mental impairment); Kirby v. Astrue, 500 F.3d 705, 708-09 (8th Cir. 2007) (affirming ALJ's finding that claimant did not suffer significant impairment due to psychiatric illness when claimant had never had any formal treatment by psychiatrist, psychologist, or other mental health professional on a long-term basis); Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (affirming the ALJ's conclusion that mental impairments were not disabling when there was no evidence "of ongoing counseling or psychiatric treatment or of deterioration or change in [claimant's] mental capabilities"); Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1987) (affirming ALJ's finding that claimant's mental impairment was not severe based on, among other things, lack of any regular treatment by mental health professional, although claimant "may experience some difficulties associated with his mental or emotional health."); Vanlue v. Astrue, No. 4:11-CV-595TIA, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (affirming the ALJ's finding that depression was not a severe impairment where the claimant had sought only minimal and conservative treatment and the claimant never required more aggressive forms of mental health treatment than medication).

The ALJ further reasoned that "[i]f [Plaintiff's] condition was not severe enough to motivate him to seek treatment, particularly when treatment is available,[4] it is difficult to accept his assertion that it is disabling." (Tr. 20). See Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2013) (noting the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); Casey v.

---

[4] In the preceding sentence, the ALJ explained there is no excuse for the absence of medical treatment in Plaintiff's case: "Even if the claimant could not afford private care, treatment is available through the system of mental health clinics operated by the state." (Tr. 20).

Astrue, 503 F.3d 687, 693 (8th Cir. 2007) (noting the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] allege[d]").

Second, the ALJ considered the objective medical evidence that does exist, and found the evidence to be inconsistent with Plaintiff's complaints of disabling anxiety. (Tr. 20-22). On May 7, 2013, Plaintiff submitted to a psychological consultative examination conducted by Joseph Monolo, Psy.D. Dr. Monolo noted that the Plaintiff appeared only "mildly anxious" and his thought processes were coherent, logical, and relevant. (Tr. 21, 355-56). Testing showed Plaintiff to be functioning within the average range, with an IQ of 103. (Tr. 21, 355). Dr. Monolo noted that Plaintiff exhibited no evidence of thought disorder or significant affective disturbance, and that Plaintiff was able to understand, remember, and follow simple instructions. (Tr. 356). With respect to functional limitations, Dr. Monolo opined:

> The client is able to understand, remember, and follow simple instructions and, during evaluation, he evidenced intact concentration and persistence. His ability to maintain these in a work setting could be compromised by anxiety, which could surface if he cannot maintain a necessary work pace or feels he is being scrutinized or judged. The client's continuing social awkwardness and anxiety could interfere with his ability to interact with coworkers, depending on his work environment.

(Id.). Dr. Monolo diagnosed Plaintiff with Asperger's disorder, social phobia, and major depressive disorder in partial remission. (Tr. 353).

On February 21, 2015, Plaintiff attended two additional post-hearing consultative examinations in connection with his SSI benefits application. (Tr. 406-27). Plaintiff received a neurological consultative examination from Riaz Naseer, M.D. (Tr. 406-16). The exam was unremarkable without any neurological deficits or abnormalities. (Id.). Dr. Naseer concluded that the Plaintiff's "general physical examination is only consistent with him being overweight and the neurological examination is nonfocal," but stated that he "continues to have real social anxiety." (Tr. 407). Dr. Naseer gave Plaintiff physical restrictions on sitting longer than 4 of 8

hours and standing/walking more than 2 of 8 hours. (Tr. 410). The ALJ found Dr. Naseer's finding that Plaintiff's physical examination was unremarkable to be inconsistent with the physical limitations placed on Plaintiff and gave Dr. Naseer's assessment no weight. (Tr. 18).

On the same day Kimberly Buffkins, Psy.D., conducted Plaintiff's psychological consultative examination. Dr. Buffkins observed that the Plaintiff was fully oriented, his eye contact was fair, his mood was neutral with an appropriate effect, and his thought processes were relevant. (Tr. 20, 421). Although the Plaintiff self-reported a previous diagnosis of Asperger's at age 19, Dr. Buffkins found insufficient evidence of current or past symptoms to meet the diagnostic criteria of an autism spectrum disorder and diagnosed Plaintiff with unspecified anxiety disorder. (Tr. 17, 19, 419, 422). Dr. Buffkins opined that Plaintiff would have minimal difficulty interacting with supervisors, coworkers, and the public and assessed that Plaintiff is able to respond appropriately to usual work situations and changes in the routine work setting. (Tr. 424). The ALJ observed that, "[d]espite [Plaintiff's] contention of disability, [his] mental status exam was unremarkable." (Tr. 20, 419-425).

Third, the ALJ found that the Plaintiff's daily activities are "not inconsistent with the performance of many of the basic activities of work and illustrate that the [Plaintiff] remains quite functional." (Tr. 21). Specifically, the ALJ detailed Plaintiff's reported activities of daily living:

> During the consultative examinations, it was noted that the [Plaintiff] maintains his personal hygiene and grooming. He also reported that he works and performs various household chores including cooking, dishwashing, and laundry. The [Plaintiff] also uses public transportation. He enjoys reading, singing, playing videogames, and composing music on his computer. He also paints at a local art center, shops for groceries with his mother and sister and "hangs out" friends two times per week.

(Tr. 21) (citing Tr. 351-57, 417-27).

Fourth, the ALJ considered potential nonmedical reasons for the Plaintiff's unemployment. Specifically, the ALJ found there is an indication Plaintiff stopped working for reasons not related to his claim of disability. (Tr. 21-22). The ALJ noted Plaintiff's consultative examination with Dr. Monolo during which Plaintiff indicated that he quit his job because he did not receive enough hours and his ex-girlfriend was working there. (Tr. 21-22). Additionally, in response to a question on a February 20, 2013 disability report asking why he had stopped working, Plaintiff explained, "I had a fiance at Taco Bell and the relationship . . . ended so badly that [I] did not want to go back. I also felt closed in the station in the kitchen[.]" (Tr. 169).

Fifth, the ALJ considered the Third Party Function Reports of the Plaintiff's mother, Tina Wilson, and sister, Alexis Simon. (Tr. 250-66). Both statements were inconsistent with the Plaintiff's complaints of disabling anxiety. For instance, both Ms. Wilson and Ms. Simon stated that Plaintiff performs various household chores including cooking, dishwashing, and laundry and he also enjoys playing guitar, drawing, writing, using the computer, and hanging out with friends. (Tr. 250, 252, 254, 258-59, 261, 263).

Sixth, the ALJ considered the progress reports provided by Danna Jensen, a supported living specialist from Bridges Community Support Services. (Tr. 22, 267-71). Ms. Jensen stated that Plaintiff receives support in housing, grooming/hygiene, scheduling and attending medical appointments, shopping, emergency procedures, money management, reading and responding to mail, and organization of paperwork and appointments. (Tr. 267). The ALJ noted that she considered Ms. Jensen's statements when limiting Plaintiff to simple tasks. (Tr. 22).

Finally, the ALJ considered the opinions of the State agency psychological consultant Scott Brandhorst, Psy.D., who opined that the Plaintiff is able to understand, remember, and follow simple repetitive tasks without contact with the public. (Tr. 22, 70-71). Dr. Brandhorst

noted that while Plaintiff had established mental impairments, he had been able to obtain his general educational development (GED) certificate and had been able to perform some work. (Tr. 71). Dr. Brandhorst also observed that the "lack of medical [history] or treatment attempts is puzzling, given the alleged impairments." (Id.). The ALJ found that the consultative examinations and the record as a whole supported Dr. Brandhorst's opinion. (Tr. 22).

In conclusion, the Court finds the ALJ's credibility determination is based on substantial evidence and is consistent with the Regulations and case law.

**B. Severity of Plaintiff's Impairments**

The ALJ found that Plaintiff had the severe impairment of anxiety disorder, but did not find that Plaintiff's severe impairments included autism spectrum disorder. Plaintiff argues that the ALJ improperly relied on the opinion of Dr. Buffkins, thereby resulting in an erroneous finding, unsupported by substantial evidence, that Plaintiff's alleged autism disorder impairment is non-severe. (Doc. 8 at 10). In particular, Plaintiff argues that if the ALJ had properly weighed Dr. Buffkins's opinion, provided her with certain medical records, and considered her qualifications, the ALJ would have found Plaintiff's autism spectrum disorder to be severe. The Court disagrees.

As stated above, 20 C.F.R. § 416.920 sets forth the five-step sequential evaluation process for determining whether a claimant is disabled within the Act's meaning. At Step 2, a claimant bears the burden of proof to demonstrate that he has a severe impairment. See Kirby, 500 F.3d at 707-08 (citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000) (reversing district court and affirming Commissioner)). An impairment must be established by "objective medical evidence from an acceptable medical source," and not claimant's "statement of symptoms." 20 C.F.R. § 416.921. A qualifying impairment "must result from anatomical,

physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. Thus, an alleged qualifying impairment must be established by objective medical evidence from an acceptable medical source, such as a licensed physician. See id.; 20 C.F.R. § 416.929. A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. See 20 C.F.R. § 416.922. "Basic work activities" encompass the abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 416.922(b). Included are mental functions such as capacities for understanding, performing, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work situation. Id.

After considering Plaintiff's medical records and noting Plaintiff's previous diagnoses of autism spectrum disorder and pervasive developmental disorder, the ALJ concluded that these impairments were non-severe. (Tr. 17). In reaching her decision, the ALJ considered the opinions of consultative examiner Dr. Kimberly Buffkins. Plaintiff makes three objections to the ALJ's consideration of Dr. Buffkins's opinions. (Doc. 8 at 10-15). First, Plaintiff argues that the ALJ failed to explain the weight she gave to Dr. Buffkins's opinion. Second, Plaintiff argues that the ALJ erred in failing to provide Dr. Buffkins with Plaintiff's medical records. Finally, Plaintiff argues that the ALJ failed to properly consider Dr. Buffkins's qualifications. For the reasons set forth below, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's autism spectrum disorder and pervasive developmental disorder is non-severe.

Plaintiff's argument that the ALJ failed to explain the weight she gave to Dr. Buffkins's opinion is correct. While the ALJ did not specify the particular weight she placed on Dr.

Buffkins's opinion, this is not a reversible error as Dr. Buffkins's opinion was not outcome determinative. In circumstances where a medical source opinion may affect the outcome of a case, substantial evidence does not support an ALJ's adverse decision if it cannot be determined what, if any, weight the ALJ afforded the opinion. McCadney v. Astrue, 519 F.3d 764, 767 (8th Cir. 2008). Here, the Court can determine that the ALJ accorded Dr. Buffkins's opinions only some weight.

Plaintiff argues that the ALJ relied heavily on Dr. Buffkins's opinion to determine that Plaintiff's autism spectrum disorder is non-severe, however, the decision of the ALJ reflects a reliance on the *absence* of medical records documenting Plaintiff's functional limitations caused by an autism spectrum disorder. While the ALJ acknowledged that Plaintiff's records reflected diagnoses of autism spectrum disorder and pervasive developmental disorder, the ALJ concluded that "the medical records do not provide any indication that the condition significantly impacts the claimant's functioning." (Tr. 17). This conclusion is supported by substantial evidence, and Plaintiff has overestimated the ALJ's reliance on Dr. Buffkins's opinion.

As summarized above, the ALJ set out the findings Dr. Buffkins made during her psychological evaluation. While the ALJ noted that Dr. Buffkins disagreed with Plaintiff's autism spectrum disorder diagnosis, this opinion is of little practical effect in this case because the ALJ relied heavily on the absence of evidence indicating that this condition affected the Plaintiff's functioning. Indeed, the mere existence of a mental condition is not per se disabling. See Dunlap v. Harris, 637, 638 (8th Cir. 1981).

For instance, while another consultative examiner, Dr. Monolo, diagnosed Plaintiff with Asperger's disorder, Dr. Monolo's report does not indicate that Plaintiff's Asperger's disorder results in functional limitations. Dr. Monolo opined:

> The client is able to understand, remember, and follow simple instructions and, during evaluation, he evidenced intact concentration and persistence. His ability to maintain these in a work setting could be compromised by anxiety, which could surface if he cannot maintain a necessary work pace or feels he is being scrutinized or judged. The client's continuing social awkwardness and anxiety could interfere with his ability to interact with coworkers, depending on his work environment.

(Tr. 356). Dr. Monolo's opinion is consistent with the ALJ's finding that the medical records do not support a finding that Plaintiff's alleged autism spectrum disorder impacts his functioning, and is, therefore, non-severe. Rather, Dr. Monolo's opinion is consistent with and supports the ALJ's finding that Plaintiff's functioning is impacted by a severe anxiety disorder and not an autism spectrum disorder.

The ALJ relied on other record evidence, including Plaintiff's self-reported daily activities, Third Party Function Reports, Danna Jensen's reports, Dr. Monolo's opinion, and Dr. Brandhorst's opinion, to determine that Plaintiff's autism spectrum disorder was non-severe. As such, when considered in view of the entire decision, the Court is able to determine that the ALJ gave only some weight to Dr. Buffkins's observations and findings. Accordingly, although the ALJ failed to identify the precise weight she gave Dr. Buffkins's opinion, the failure to do so here does not require her finding of non-disability to be set aside. See Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992) (administrative finding not required to be set aside when deficiency in opinion-writing technique has no bearing on outcome).

Next, Plaintiff argues that the ALJ erred in failing to provide Dr. Buffkins with Plaintiff's medical records and that such failure violated the Hearings, Appeals and Litigation Law Manual ("HALLEX")[5], requiring remand because as the weight accorded to Dr. Buffkins's opinion would have affected the outcome of the case. (Doc. 8 at 10-15). Plaintiff references several

---

[5]    HALLEX is the SSA's publication that provides guidelines regarding how ALJs and other Social Security Disability adjudicators are to handle various aspects of the disability process.

pages from the record where the Plaintiff had been diagnosed with pervasive developmental disorder or Asperger's disorder, and argues the ALJ was required to prepare a medical exhibits folder including those documents pursuant to HALLEX I-2-5-20(A) and I-2-5-22.  (Doc. 8 at 12).  These HALLEX provisions instruct the ALJ or hearing office staff to supplement a request for a consultative examination with "[a] medical exhibits folder which contains evidence relating to the type of examination ordered with instructions for the State agency to send the folder to the consultative examiner for review."   Soc. Sec. Admin., Consultative Examinations and Test, Hearings, Appeals, and Litig. Law Manual, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-20.html (last visited Sep. 21, 2018).

As this Court has noted, "There is some debate as to whether the instructions in HALLEX have the force of regulation (and are thus binding, with violations requiring remand) or if they are administrative guidelines, the violation of which does not require remand."[6] Hopper v. Berryhill, No. 4:16-CV-1309 JMB, 2017 WL 4236974, at *12 (E.D. Mo. Sept. 25, 2017).  This Court has concluded, however, that "the Eighth Circuit would hold that HALLEX does not have the force of law."  Ellis v. Astrue, No. 4:07-CV-1031 AGF, 2008 WL 4449452, at *16 (E.D. Mo. Sept. 25, 2008).  Thus, remand is only necessary where the ALJ's error results in a decision that is unsupported by substantial evidence.

As previously stated, the Court finds the ALJ gave Dr. Buffkins's opinion only some weight, and the ALJ's finding that Plaintiff's autism spectrum disorder is non-severe is supported by substantial evidence, making any error in failing to provide Dr. Buffkins with medical records

---

[6]     There is disagreement among the Circuits as to whether HALLEX is binding.  Compare Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000) (finding that HALLEX has no legal force); with Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000) (HALLEX is not binding law but administrative agencies should follow their own internal regulations).  The Eighth Circuit Court of Appeals has not considered this issue.

harmless. Additionally, and as the ALJ noted in her credibility determination, the record is largely devoid of any history of treatment because the Plaintiff has declined to seek treatment.

Nonetheless, the Court has reviewed the record pages that Plaintiff submits should have been provided to Dr. Buffkins and finds these records provide little detail about the functional limitations Plaintiff's autism spectrum disorder allegedly causes. (Tr. 317-18, 376-77 (duplicate of 317-18), 326, 391 (duplicate of 326), 355, 357, 405). Excluding Dr. Monolo's report already discussed, the most detailed reference is from a brief emergency hospital stay from August 26, 2008 to August 28, 2008, where a physician diagnosed Plaintiff with pervasive developmental disorder, not otherwise specified, and noted that the Plaintiff had "poor eye contact, slow on social cues, _____ personality features, some obsessive compulsive traits and attachment to transition objects."[7] (Tr. 326). Nothing in this report suggests that Plaintiff has functional limitations as a result of an autism spectrum disorder. The other references cited by Plaintiff merely note a diagnosis of pervasive developmental disorder or Asperger's disorder, with little to no supportive findings (e.g., behavioral observations). The failure to provide medical records to the consultative examiner in this case is not reversible error. This is not a situation where the Plaintiff sought frequent medical treatment from therapists and there are numerous medical records discussing the Plaintiff's symptoms and diagnoses. As the ALJ explained, and other consultative examiners noted,[8] "the record contains no evidence of mental health treatment during the relevant period." (Tr. 20).

Notably, Plaintiff informed Dr. Buffkins of his prior diagnosis of Asperger's at age 19. (Tr. 419). The medical records referenced by Plaintiff provide little more information than what

---

[7]        The blank space appears in the original record. (Tr. 326).

[8]        Dr. Brandhorst observed that the "lack of medical [history] or treatment attempts is puzzling, given the alleged impairments." (Tr. 71).

Plaintiff himself recounted to Dr. Buffkins – a diagnosis. The ALJ considered the medical records in their entirety and found that functional limitations reflected in the medical records related to Plaintiff's anxiety disorder. Therefore, the failure to provide Dr. Buffkins with the referenced medical records has not resulted in a decision unsupported by substantial evidence, and this Court will decline to remand the decision for harmless error.

Finally, Plaintiff argues that the ALJ failed to disclose and consider Dr. Buffkins's qualifications. This argument is without merit and Plaintiff has not cited a case, statute, or even a valid rationale to support his argument. Licensed psychologists are acceptable medical sources qualified to provide medical opinion evidence in disability claims. Crocker v. Berryhill, No. 4:16-CV-975 NCC, 2017 WL 4176427, at *5 (E.D. Mo. Sept. 21, 2017). As a State agency medical consultant, Dr. Buffkins is a qualified expert in Social Security disability evaluation; therefore, the ALJ was required to consider her findings as opinion evidence. See 20 C.F.R. § 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence). Dr. Buffkins's degree ("Psy.D."), her credential as a licensed psychologist, and her license number were all listed in her signature block at the end of her examination report. (Tr. 422). When Plaintiff originally challenged Dr. Buffkins's qualifications he claimed that Dr. Buffkins has been "routinely excluded as an evaluator by at least one ALJ" and that she "has a history of providing unreliable evidence." (Tr. 275) However, Plaintiff's claims were completely unsubstantiated and, in denying Plaintiff's request for a supplemental hearing and Dr. Buffkins's updated CV, the ALJ explained that "counsel failed to present any foundation for his desire to question why a particular judge does not use Dr. Buffkins." (Tr. 20, 275). In his appeal to this Court, Plaintiff has failed to provide any evidence to support his argument that the ALJ

improperly declined to disclose Dr. Buffkins's qualifications. As such, the Court declines to reverse ALJ's decision on this basis.

Furthermore, as discussed above, prior to reaching these conclusions, the ALJ considered Plaintiff's credibility and found Plaintiff's subjective complaints were not fully credible. (Tr. 22). The Court has found the ALJ's credibility determination is based on substantial evidence. Because the ALJ provided good reasons for her credibility determination, this Court will defer to the ALJ's findings in this regard. Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination.") (quoting Gregg, 354 F.3d at 714). See also Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence."); Eichelberger, 390 F.3d at 590 ("We will not substitute our opinion for that of the ALJ who is in a better position to assess credibility."). Moreover, the issue is not whether the claimant actually experiences the subjective complaints alleged, but whether those symptoms are credible to the extent that they prevent him from performing substantial gainful activity. See Baker v. Apfel, 159 F.3d 1140, 1145 (8th Cir. 1998).

The Court has found that the ALJ's consideration of the medical record provides substantial evidence to support her credibility determination. The Court further finds that the medical evidence provides substantial evidence to support the ALJ's conclusion that Plaintiff's autism spectrum disorder does not significantly impact his function and is, therefore, non-severe. Finally, the Court finds that the ALJ's decision at Step 2, finding that the only severe impairment Plaintiff suffered from was anxiety disorder, is supported by substantial evidence and is

consistent with the Regulations and case law, and Plaintiff's arguments to the contrary are without merit.

### C. Vocational Expert Testimony

Plaintiff next argues that the hypothetical question posed to the vocational expert ("VE") failed to include all of Plaintiff's limitations, and therefore the VE's response did not constitute substantial evidence. (Doc. 8 at 8-10). Plaintiff contends that the ALJ's RFC determination was more restrictive than the hypothetical question. The Defendant responds that differences between the questions the ALJ asked the VE and the ALJ's RFC determination are properly explained as a typographical error not requiring reversal. (Doc. 13 at 12-14). The Court agrees with Defendant.

Plaintiff specifically objects to the ALJ's reliance on hypothetical questions restricting an individual to maintaining attention for two-hour segments over an eight-hour period, while the ALJ's RFC determination limits him to maintaining attention for two-hour segments over a three-hour period. (Tr. 23-24, 289-90). However, all of the ALJ's hypotheticals, including the ALJ's vocational interrogatories and the hypotheticals she asked the VE during the hearing, discussed maintaining attention for two-hour or four-hour segments over an <u>eight-hour</u> period. (Tr. 59-61, 285, 287, 289). Based on the ALJ's written vocational interrogatories and the hypotheticals she posed to the VE at the hearing, it is clear the number "3" was intended to be an "8," and it is readily apparent that the ALJ made a typographical error. A deficiency in opinion writing does not require reversal. <u>Hensley v. Colvin</u>, 829 F.3d 926, 932 (8th Cir. 2016); <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where the deficiency probably has no practical effect on the outcome of the case."); <u>see Ray v. Colvin</u>, No.

2:12-CV-79 NAB, 2014 WL 1314854, at *3–4 (E.D. Mo. Mar. 31, 2014) (finding the ALJ's inclusion of "depression" and "anxiety" in the paragraph heading regarding severe impairments was a typographical error, as the body of the paragraph indicated the ALJ found those impairments to be non-severe).

In his Reply brief, Plaintiff makes an additional argument with respect to an alleged discrepancy between the ALJ's interrogatories to the VE and the RFC determination. (Doc. 14 at 1-2). Plaintiff states that the three hypotheticals contained in the ALJ's written interrogatories asked the VE to consider the limitation "able to respond appropriately to supervisors and coworkers where contact is occasional," while the RFC finding included the limitation "casual and infrequent" contact with supervisors and coworkers. (Id.; Tr. 19, 285-291). Plaintiff argues the RFC is not supported by substantial evidence because "causal and infrequent" is substantially more limiting than "occasional," though Plaintiff cites no authority to support his argument. (Doc. 14 at 2).

Plaintiff's argument fails to recognize that the ALJ asked the VE the following hypothetical question at the hearing:

> Q.    For the third hypothetical, let me edit. Again, maintain concentration and attention for two-hour segments over an eight-hour period. Respond appropriately to supervisors and coworkers, where contact is causal and infrequent.
> Never contact with the general public. Adapt to routine and simple work changes and never operate a motor vehicle. Can the hypothetical individual perform any of the past jobs you've described as actually performed or generally performed?
>
> A.    Yes. Those jobs could still be done.

(Tr. 61). This hypothetical question to the VE included the limitation "casual and infrequent" contact with supervisors and coworkers. The ALJ's inclusion of the limitation of casual and infrequent contact with supervisors and coworkers in the RFC determination is therefore supported by substantial evidence.

# V. CONCLUSION

As discussed above, the Court finds that the ALJ did not in concluding that plaintiff's Asperger's disorder is non-severe err or in considering the opinion of consultative psychologist Dr. Buffkins.  The ALJ's hypothetical questions to the vocational expert encompassed all relevant impairments, and the RFC determination is based on substantial evidence.  Further, the RFC determination as set forth in the ALJ's Decision contains a typographical error that does not affect the outcome of the case.  Plaintiff's arguments to the contrary are without merit.

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment will accompany this Memorandum and Order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>27th</u> day of September, 2018.